UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH A. SIMON,

    Plaintiff,                      Civil Action No. 14-12007

        v.                     District Judge DAVID M. LAWSON
                                        Magistrate Judge R. STEVEN WHALEN

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Joseph A. Simon ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. The parties have filed cross-motions for summary judgment. Both motions have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons discussed below, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

On March 27, 2012, Plaintiff applied for DIB, alleging disability as of November 17, 2010 (Tr. 117-118). Following the initial denial of benefits, Plaintiff requested an

administrative hearing, held on January 30, 2013 in Oak Park, Michigan (Tr. 35). Patricia S. McKay, Administrative Law Judge ("ALJ") presided. Plaintiff, represented by attorney Kenneth Laritz, testified (Tr. 40-66), as did Vocational Expert ("VE") James M. Fuller (Tr. 66-74). On April 11, 2013, ALJ McKay found Plaintiff not disabled (Tr. 18-19). On May 17, 2014, the Appeals Council denied review (Tr. 1-3). Plaintiff filed suit in this Court on May 20, 2014.

## BACKGROUND FACTS

Plaintiff, born June 9, 1980, was 32 when ALJ McKay issued her decision (Tr. 19, 117). He completed two years of college and worked previously as a customer service agent and production manager (Tr. 134-135). His application for benefits alleges disability as a result of multiple sclerosis ("MS") (Tr. 134).

### A.     Plaintiff's Testimony

Plaintiff offered the following testimony.

He currently lived in Warren, Michigan at his parents' home (Tr. 40). At the time of the MS diagnosis, he was working toward a Bachelor's degree at Western Michigan University (Tr. 40-41). Since returning to Warren, he had attempted without success to complete courses at a local community college (Tr. 42).

Plaintiff stood 5' 10" and weighed 155 pounds (Tr. 43). He was able to climb and descend stairs and perform his own laundry chores (Tr. 43). In one of his former jobs, he monitored a fleet of printers and copiers, requiring him to fix paper jams and replace ink

cartridges (Tr. 44). In his job as a production manager, he oversaw printing jobs from intake to completion (Tr. 46). The production manager job did not require him to make hiring decisions, administer discipline, or schedule employee shifts (Tr. 46-47). Before working in the print-related jobs, he worked as a busboy and a roofer (Tr. 47).

Plaintiff stopped working when symptoms of MS rendered him unable to walk to his car (Tr. 53). He had been placed on short-term disability and later, was awarded long-term disability benefits (Tr. 54-55). He had not applied for unemployment benefits (Tr. 55). He did not perform volunteer work and was not looking for a job (Tr. 55).

Plaintiff was now able to drive every day (Tr. 55). On a typical day, he arose at 9:00 or 10:00 a.m., showered, ate breakfast, stretched, and watched television (Tr. 55). He experienced a reduction in hand numbness and blurred vision from a "health shake" called "Reliv" and by doing yoga (Tr. 51, 56). He was able to take care of his personal needs (Tr. 56). He seldom vacuumed or mowed the lawn due to difficulty using vibrating machines (Tr. 57). He used social media on an occasional basis only (Tr. 57). Concentrational problems limited his ability to read (Tr. 57). He was not dating but saw extended family and friends occasionally (Tr. 58). Yoga did "wonders" for both his mental and physical condition (Tr. 58).

Plaintiff currently experienced tingling of the hands and feet (Tr. 59). His ability to balance was less than "100 percent" (Tr. 59). He was able to hold a pen (Tr. 59). The former condition of insomnia had resolved (Tr. 59). He denied current mental health treatment, but

alleged constant fatigue (Tr. 60). He did not experience medication side effects (Tr. 60). He smoked a half-pack of cigarettes a day (Tr. 60). He denied the use of street drugs except for medical marijuana (Tr. 61). He denied the use of a cane or walker (Tr. 61).

Plaintiff opined that he was unable to cope with "the stresses of a full-time job" and the driving time required to get back and forth from work (Tr. 61). He alleged that he would require constant breaks and would be unable to walk long distances (Tr. 61). In response to questioning by his attorney, he testified that he was unable to engage in even light household chores for more than 20 minutes before experiencing exhaustion (Tr. 62). He was unable to walk for more than half a block before he began to "shuffl[e]" (Tr. 63). He coped with fatigue by reclining (Tr. 63). He reported that the condition of MS was adversely affected by temperature extremes (Tr. 64). He experienced approximately four "bad days" each week, characterized by coordination problems and significant fatigue (Tr. 64-65). The bad days were precipitated by increased exertion or mental stress (Tr. 64). He would be unable to perform manipulative activities for more than 30 minutes without requiring a break (Tr. 65). He also experienced sensitivity to fluorescent lights (Tr. 65).

  **B. Medical Evidence**

### 1. Treating Sources

A December, 2010 MRI of the brain was consistent with a diagnosis of MS (Tr. 185, 196-197). In January, 2011 neurologist Steven Beall, M.D. rated the current severity of Plaintiff's muscle weakness as "1" on a scale of 1 to 5 (Tr. 181). Plaintiff exhibited a

normal gait (Tr. 181). His vision was 20/20 (Tr. 181). Coordination was normal in all extremities (Tr. 181). Dr. Beall recommended the use of immunomodulatory agents for the condition of MS (Tr. 181). Dr. Beall's March, 2011 records state that Plaintiff experienced level 1 leg weakness (Tr. 180). Dr. Beall opined that Plaintiff could return to work, but was limited to walking for no more than 30 minutes at a time (Tr. 180). The following month, Plaintiff reported level 3 weakness upon walking "long distances" (Tr. 179). The following month, neurologist Nancy Joupperi, D.O. noted that the recent MRI of the brain was consistent with a diagnosis of MS (Tr. 185, 196-197). She noted 5/5 muscle strength in all extremities and a normal gait (Tr. 185). She observed "improved neurologic function . . ." (Tr. 185). Dr. Joupperi examined Plaintiff in July, 2011, noting Plaintiff's report that he was performing yoga daily and had not fallen recently (Tr. 184). She noted that he was not taking any "disease modifying drug" (Tr. 184). Dr. Joupperi's February, 2012 treating records show that Plaintiff was not taking prescription drugs for MS, but reported light sensitivity and fatigue (Tr. 183, 187). He denied changes to his health history (Tr. 183).

In April, 2012, Plaintiff was admitted for inpatient psychiatric treatment with a diagnosis of "mood disorder secondary . . . to possible MS" after threatening a gas station attendant (Tr. 189, 191). Plaintiff reported sleep disturbances due to his father's alcoholism (Tr. 189, 191). Upon discharge the following day, he was assigned a GAF of 60[1] and

---

[1]A GAF score of 51–60 indicates moderate symptoms OR moderate difficulty in social, occupational, or school functioning. *American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders–Text Revision,* 34 ( DSM–IV–TR )(4th

encouraged to followup with outpatient treatment (Tr. 190). In September, 2012, Dr. Juopperi observed normal muscle tone but "evidence of generalized tremor" (Tr. 194). She found his condition unchanged from the previous examination (Tr. 194).

### 2. Non-Treating Sources

In March, 2012, Sonia Ramirez-Jacobs, M.D. reviewed the treating medical evidence on behalf of the SSA (Tr. 81-86). She found that despite the diagnosis of MS, Plaintiff was capable of returning to his past relevant work (Tr. 86).

### C. Vocational Expert Testimony

VE James M. Fuller classified Plaintiff's past jobs as a printing manager and copy machine servicer as skilled and exertionally light; busboy, unskilled/medium; and roofer, unskilled/heavy[2] (Tr. 67). ALJ McKay then posed the following question to the VE, describing an individual of Plaintiff's age, education, and work experience with the following limitations:

---

ed.2000).

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

> [A]ssume we have a hypothetical claimant . . . [with] the residual functional capacity to perform the full range of light exertional work which requires him to lift up to 20 pounds occasionally, but he's got some additional limitations. . . . This hypothetical claimant needs to work primarily at a workstation. There's testimony he can walk but only for about 20 minutes at a time really want him to work at a workstation. He can occasionally climb stairs . . . or ramps or crouch or crawl, kneel or stoop or bend. He needs to avoid workplace hazards which would include climbing ladders, dangerous moving machinery, those types of environments, and he needs to be able to control the pace of the work so that it's a low stress environment. With those limitations, do you feel this hypothetical claimant could perform any of the past relevant work . . . either as he did or as is generally performed in the national economy(Tr. 68)?

The VE testified that the above limitations would preclude Plaintiff's past relevant work but would allow for the light, unskilled work of an assembler (2,000 positions in the regional economy); packager (2,000); and inspector (2,000); as well as the sedentary work of a "trimmer, smoother, polisher" (1,500) and surveillance system monitor (3,000) (Tr. 69-70)

The VE testified further that the need to avoid "power or vibrating . . . tools" would reduce the assembler positions by 50 percent (Tr. 70). He stated that the inability to work in areas with fluorescent lighting would eliminate most of the above-stated jobs (Tr. 71). He stated that if the hypothetical individual were unable to perform manipulative activities for more than 20 minutes, all of the above-stated jobs except the surveillance system monitor positions would be eliminated (Tr. 71). The VE stated that if the individual were required to take 20 to 30 minute breaks at unpredictable intervals, all unskilled work would be precluded (Tr. 71-72). He stated that his testimony was consistent with the information

found in the *Dictionary of Occupational Titles* ("*DOT*") and *Selected Characteristics of Occupations* (Tr. 73).

### D. The ALJ's Decision

Citing Plaintiff's medical records, ALJ McKay found the severe impairment of MS but that the condition did not meet or medically equal any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13-15). She found that the condition of "mood disorder" did not cause more than "minimal limitation" in Plaintiff's work-related abilities (Tr. 13). She found that Plaintiff retained the residual functional capacity ("RFC") for light work with the following additional limitations:

> [W]ork primarily at a workstation which does not require walking for more than 20 minutes at a time. [He] is able to climb ramps and stairs occasionally. He is able to crouch, crawl, kneel, stoop, and bend occasionally. [He] must avoid workplace hazards including moving machinery, unprotected heights, and climbing ladders. [He] must work in a low-stress work environment such that he is able to control the pace of the work (Tr. 15).

Citing the VE's testimony, the ALJ found that while Plaintiff was unable to return to his past relevant work, he could perform the jobs of assembler, packager, and inspector (Tr. 18-19).

The ALJ discounted the allegations of disability, noting that while the diagnosis of MS was undisputed, the medical evidence did not show that the condition was disabling (Tr. 16). The ALJ cited Dr. Beall's January, 2011 treating observations including a normal gait and coordination (Tr. 16). She noted that Plaintiff was able to participate in yoga and a physical therapy plan (Tr. 16). The ALJ cited April, 2012 psychiatric records stating that Plaintiff declined to take medication for MS (Tr. 17). She found that "the preponderance of

-8-

credible evidence" supported the conclusion that Plaintiff experienced "at most, mild to moderate functional limitations . . ." (Tr. 18).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984)

### ANALYSIS

Plaintiff makes three arguments in favor of remand. First, he contends that he meets Listing 11.09 (Multiple Sclerosis). *Plaintiff's Brief,* 6-12, *Docket #11*; 20 C.F.R. Part 404, Subpart P, Appendix 1 § 11.09. On a related note, he argues that the ALJ's finding that his condition did not medically equal Listing 11.09 is unsupported by any medical opinion. *Id.* at 12-14 (citing Tr. 15). Third, he contends that the ALJ erred by discounting his claims of continual fatigue. *Id.* at 15-19.

Because the ALJ's credibility determination is partially dispositive of the other two

arguments, it is considered first.

### A. The Credibility Determination

Plaintiff argues, in effect, that the failure to include all of his professed claims in the hypothetical question invalidates the VE's finding that he was capable of a significant range of unskilled light work. *Plaintiff's Brief* at 15-19. He contends that although he is able to perform a variety of activities, his need for frequent rest periods prevents him from performing substantial gainful activity. *Id.*

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186 at *2. The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record."*Id.* [3]

---

[3]In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or

Contrary to Plaintiff's argument, the ALJ's credibility determination was well supported and explained. She acknowledged the December, 2010 MRI confirming the presence of MS, but observed that the 2011 and 2012 treating records did not support the allegations of disabling symptomology (Tr. 16-17). She cited 2011 treating neurological records by Dr. Beall showing a normal station, gait, coordination, and vision and his recommendation that Plaintiff was capable of returning to work (Tr. 16).

While Plaintiff claims that his daily activities are regularly interrupted by the MS-induced symptom of fatigue, the ALJ noted that Plaintiff declined repeated recommendations by treating sources to take medication generally prescribed for MS (Tr. 17). *See Sias v. Secretary of Health and Human Services* 861 F.2d 475, 480 (6th Cir. 1988)(allegations of disability undermined by failure to follow medical regime recommended by treating sources). Thus, the ALJ did not err in noting that Plaintiff's failure follow his neurologists' advice cast doubt on his claims of allegedly debilitating fatigue. By itself, Plaintiff's testimony is inconsistent with a finding of disability. As noted by the ALJ, Plaintiff reported that he participated in daily yoga which did "wonders" in addressing symptoms of MS (Tr. 17, 58). He reported good results from a "health shake" recommended by his grandmother (Tr. 51, 56). The ALJ did not err in finding that Plaintiff's ability to perform yoga, perform

---

other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

household chores, and drive on a daily basis contradicted the allegations of constant fatigue and several "bad days" each week. I agree with her conclusion that "a preponderance of the credible evidence" (rather than merely substantial evidence) supported the finding that Plaintiff was not disabled. *See Walters v. Commissioner of Social Sec.*, 127 F. 3d 525, 531 (6th Cir. 1997); *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir.1993)( discounting credibility "appropriate" where the testimony and medical records contradict the allegations of disability). Likewise, the ALJ did not err by declining to include Plaintiff's alleged need for intermittent rest periods in the hypothetical question. *See Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118–119 (6th Cir.1994)(ALJ need not include discredited claims in question to VE).

For these reasons, the ALJ's credibility determination does not provide grounds for remand.

### B. Listing 11.09

Plaintiff also argues that he meets or medically equals Listing 11.09C. *Plaintiff's Brief* at 6-12; 20 C.F.R. Part 404, Subpart P, Appendix 1 § 11.09. He also argues that the ALJ's conclusion that he did not "medically equal" Listing 11.09 is unsupported by a medical opinion. *Id.* at 12-14.

To meet Listing 11.09C (Multiple Sclerosis), the claimant must show "[s]ignificant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in

areas of the central nervous system known to be pathologically involved by the multiple sclerosis process." § 11.09.

A finding of disability under Listing 11.09C requires "(1) documenting a diagnosis of multiple sclerosis, (2) obtaining a description of fatigue considered to be characteristic of multiple sclerosis, and (3) obtaining evidence that the system has actually become fatigued." § 11.00. In determining "the magnitude of the impairment," the ALJ "must consider the degree of exercise and the severity of the resulting muscle weakness." *Id.*

Clinical testing shows that Plaintiff experienced, at most, moderate muscle weakness (Tr. 179-181, 185, 194). Likewise, the evidence of record supports the finding that the purported fatigue upon activity did not preclude exertionally light work (Tr. 181, 184-185). The ALJ noted that Plaintiff's condition was stable without medication (Tr. 15). She cited Plaintiff's statement that he was able to walk for 20 minutes at a time before becoming fatigued and treating records showing a normal station and gait, 20/20 vision, and "mild" fatigue upon walking a dog (Tr. 15-16). The ALJ noted Plaintiff's April, 2012 report that he was able to control symptoms of MS with yoga and "health drinks" (Tr. 17). She cited Dr. Beall's finding that Plaintiff was capable of returning to work requiring up to 30 minutes walking at one time and lifting up to 25 pounds (Tr. 17). She credited Dr. Ramirez-Jacobs' conclusion that Plaintiff was capable of a significant range of light work (Tr. 17). The ALJ did not err in finding that the evidence supported the finding that Plaintiff was capable of light work.

Further, the ALJ's finding that Plaintiff did not "medically equal" a listed impairment is also well supported. Plaintiff relies on SSR 96-6p, which states that "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge ... must be received into the record as expert opinion evidence and given appropriate weight." SSR 96–6p, 1996 WL 374180, *3 (1996). Plaintiff acknowledges that Dr. Ramirez-Jacobs found that he did not medically equal a Listed impairment (Tr. 78), but argues that the Dr. Ramirez-Jacobs found only that he did not meet Listing 1.04 (Spine Disorders) rather than Listing 11.09 (Tr. 83). He argues that Dr. Ramirez-Jacobs' finding does not satisfy the requirement for a medical opinion on the issue of equivalence.

However, Dr. Ramirez-Jacobs' findings, read in their entirety, show that she considered whether Plaintiff was disabled as a result of MS before concluding that he did not equal a listed impairment. She cited 2011 examination records showing good balance, daily yoga, and a normal neurological exam (Tr. 82). She noted Plaintiff's report to a treating source that he was "doing quite well" (Tr. 82). In support of her finding that Plaintiff could perform exertionally light work, she noted that Plaintiff was able to shop, perform laundry chores, drive, and "sometimes" played soccer (Tr. 85). Dr. Ramirez-Jacobs' discussion of the treating neurological records and her conclusion that Plaintiff could return to his past relevant work (as performed) establish that she found that he did not meet or medically equal any Listed impairment (Tr. 86). Plaintiff's additional argument that Dr. Ramirez-Jacobs'

finding should be discredited because she is an internist rather than a neurologist is not well taken. SSR 96–6p does not require that the opinion of medical equivalency must be made by a specialist and I am unaware of any case law interpreting SSR 96-6p to state that a specialist's opinion is required on the issue of equivalency.

Moreover, Plaintiff has not met the burden to show that his condition medically equaled any listed impairment. He does not dispute the Step Two finding that his only "severe" impairment is MS or make a plausible argument that the condition, combined with other conditions, establish disability at Step Three (Tr. 13-14). At Step Three, it is the claimant's "burden to prove that he has an impairment or combination of impairments listed in, or medically equal to one listed in, 20 C.F.R. Pt. 404, Subpt, P, App. 1." *Lusk v. Commissioner of Social Sec.,* 106 Fed.Appx. 405, 411, 2004 WL 1791472, 5 (6 Cir. August 6,2004). "To do so, he must present specific medical findings that his impairment meets the applicable impairment or present medical evidence that describes how his impairment is equivalent to a listed impairment." *Id.* (*citing Foster v. Halter*, 279 F.3d 348, 354 (6th Cir.2001); *Land v. Sec'y of HHS*, 814 F.2d 241, 245 (6th Cir.1986). The failure to articulate a basis for an equivalency finding, along with the lack of record support, defeats this argument.

The ALJ's determination that Plaintiff was capable of light work was generously within the "zone of choice" accorded to the fact-finder at the administrative hearing level. As such, it should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Dated: April 30, 2015

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on April 30, 2015, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla<br>
Case Manager